1   SEYFARTH SHAW LLP
    David D. Kadue (SBN 113578)
2   dkadue@seyfarth.com
    David D. Jacobson (SBN 143369)
3   djacobson@seyfarth.com
    Jinouth D. Vasquez Santos (SBN 299056)
4   jvasquezsantos@seyfarth.com
    2029 Century Park East, Suite 3500
5   Los Angeles, California 90067-3021
    Telephone:    (310) 277-7200
6   Facsimile:     (310) 201-5219

7   Attorneys for Defendant
    COSTCO WHOLESALE CORPORATION

8

9

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12

13  SIGRID R. WILLIAMS, on behalf of herself, all        Case No. 4:18-CV-00884-JSW
    others similarly situated,
14                                                        HON. JEFFERY S. WHITE, COURTROOM 5
                    Plaintiff,
15                                                        NOTICE OF MOTION AND
                                                          MEMORANDUM OF POINTS AND
16          v.                                            AUTHORITIES IN SUPPORT OF
                                                          COSTCO'S MOTION FOR SUMMARY
17  NICHOLS DEMOS, INC., an Oregon corporation;          OR PARTIAL SUMMARY JUDGMENT
    NICHOLS & ASSOCIATES, INC., an Oregon
18  corporation; FLAIR EVENT MODELS, INC., an            [FED. R. CIV. P. 56]
    Oregon corporation; COSTCO WHOLESALE
19  CORPORATION, a Washington corporation; and           [Filed Concurrently with Declarations of Greg
    DOES 1 through 50, inclusive,                         Carter, Julie Nichols, Sarah Rajski, Dawn
20                                                        Vetter, David Kadue; Appendix of Evidence;
                    Defendants.                           [Proposed] Order]
21
                                                          Date:      December 20, 2019
22                                                        Time:      9:00 a.m.
                                                          Crtm:      5
23
                                                          Complaint Filed: February 9, 2018
24                                                        FAC Filed: March 28, 2018
                                                          SAC Filed: July 18, 2018
25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................... 1

RELIEF SOUGHT ............................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................ 2

FACTUAL BACKGROUND .................................................................................. 3

    Costco's usual course of business is in-line sales ............................................... 3

    Costco employees conducting in-line sales share fundamental characteristics ...... 3

    Suppliers staff roadshows with their own workers or workers assigned by staffing
    companies ...................................................................................................... 3

    Special Events Agreements .............................................................................. 4

    Williams, a marketing professional, was hired by staffing companies—not Costco—to
    represent roadshow suppliers ........................................................................... 4

    Williams was trained by Flair or Nichols or a supplier, not by Costco ................. 6

    Hours were recorded and money was paid by Flair or Nichols, not Costco ........... 6

    Williams sent sales reports to Flair or Nichols or the supplier, not Costco ........... 7

    Williams's work was scheduled by Flair or Nichols, not Costco ........................ 7

    Williams was never terminated by Costco ........................................................ 7

PROCEDURAL BACKGROUND ........................................................................... 7

    The Court granted Costco's motion to dismiss, with leave to amend .................... 8

    The Second Amended Complaint ("2AC") ......................................................... 9

LEGAL STANDARD ........................................................................................... 10

ARGUMENT ..................................................................................................... 10

I.    All California claims against Costco fail because it was not Williams's employer: Costco
    did not exercise day-to-day control over her, suffer or permit her to work, or engage her. .......... 10

    A.    Costco did not exercise day-to-day control over the work. ........................ 10

    B.    Costco did not suffer or permit Williams to work. ................................. 13

    C.    Costco was not Williams's common law employer, as it did not engage her. ........ 14

II.    Nothing in *Dynamex* salvages Williams's claims. .......................................... 16

    A.    *Dynamex* does not apply. .................................................................. 16

i

B.    All claims in any event would fail under *Dynamex*. ........................................ 16

    1.    Freedom from control and direction in connection with performance of work.... 17

    2.    Performing work beyond the usual course of Costco's business........................ 17

C.    Customarily engaged in independent occupation ............................................. 17

III.   The Section 203 penalty claim fails because Costco, in good faith, believed that it was not Williams's employer and did not owe her wages. .......................................................... 17

A.    Costco reasonably believed it was not Williams's employer. .......................... 18

B.    There was in any event no willful failure to pay wages upon termination. ...................... 18

IV.   The Section 226 claim fails because Costco did not knowingly or intentionally fail to provide wage statements required of Williams's employer. ........................................................ 18

V.   The Section 2810.3 claim fails because Costco was not a client employer supplied with labor from a labor contractor........................................................................................................ 19

VI.   The FLSA claim fails because Costco in good faith reasonably believed it was not Williams's employer. ........................................................................................................................ 20

VII.   Williams was in any event an exempt outside salesperson........................................... 21

A.    Williams made sales and obtained orders....................................................... 22

B.    Williams customarily worked away from her employer's place of business. .................. 22

CONCLUSION........................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ackler v. Cowlitz County*,
  7 Fed. Appx. 543 (9th Cir. 2001) ...............................................................................21

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................................10

*Apodaca v. Costco Wholesale Corp.*,
  2014 WL 2533427 (C.D. Cal. June 5, 2014) ..............................................................19

*Bonnette v. Cal. Health & Welfare Agency*,
  704 F.2d 1465 (9th Cir. 1983) ...........................................................................2, 9, 20

*Boyd v. Bank of America Corp.*,
  109 F. Supp. 3d 1273 (C.D. Cal. 2015) ................................................................2, 19

*Bright v. Dennis Garber & Associates*,
  2011 WL 13085923 (C.D. Cal. May 13, 2011) ...........................................................12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................................10

*Damassia v. Duane Reade, Inc.*,
  2005 U.S. Dist. LEXIS 9768 (S.D.N.Y. May 20, 2005) ..............................................21

*Doe I v. Wal-Mart Stores, Inc.*,
  572 F.3d 677 (9th Cir. 2009) ......................................................................................12

*Hurst v. Buczek Enters.*,
  870 F. Supp. 2d 810 (N.D. Cal. 2012) ........................................................................19

*Johnson v. Serenity Transportation, Inc.*,
  141 F. Supp. 3d 974 (N.D. Cal. 2015) ..................................................................12, 13

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988) ...................................................................................................21

*Moore v. Int'l Cosmetics & Perfumes*,
  2016 WL 3556610 (C.D. Cal. 2016)...................................................................2, 21, 22

*Ochoa v. McDonald's Corp.*,
  133 F. Supp. 3d 1228 (N.D. Cal. 2015) .......................................................................12

*Salazar v. McDonald's Corp.*,
  939 F.3d 1051 (9th Cir. 2019) ............................................................................. *passim*

i

*Torres-Lopez v. May*,
    111 F.3d 633 (9th Cir. 1997) ................................................................................20

*Wynn v. National Broadcasting Co.*,
    234 F. Supp. 2d 1067 (C.D. Cal. 2002) ..............................................................14

**California Cases**

*Amaral v. Cintas Corp. No. 2*,
    163 Cal. App. 4th 1157 (2008) ............................................................................18

*Armenta v. Osmose, Inc.*,
    135 Cal. App. 4th 314 (2005) ..............................................................................18

*Ayala v. Antelope Valley Newspapers, Inc.*,
    59 Cal. 4th 522 (2014) .........................................................................................14

*Barnhill v. Robert Saunders & Co.*,
    125 Cal. App. 3d 1 (1981) ...................................................................................18

*Curry v. Equilon Enterprises, LLC*,
    23 Cal. App. 5th 289, 311-12 (2018) ..............................................................13, 16

*Dynamex Operations West, Inc. v. Superior Court*,
    4 Cal. 5th 903 (2018) ....................................................................................2, 16, 17

*Futrell v. Payday California, Inc.*,
    190 Cal. App. 4th 1419 (2010) ........................................................................11, 14

*Henderson v. Equilon Enterprises, LLC*,
    2019 WL 4942458 (Cal. Ct. App. Oct. 8, 2019)...................................................16

*Manford v. Singh*,
    40 Cal. App. 700 (1919) ......................................................................................18

*Martinez v. Combs*,
    49 Cal. 4th 35 (2010) ................................................................................... *passim*

*McDonald v. Shell Oil Co.*,
    44 Cal. 2d 785 (1955) ..........................................................................................12

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations*,
    48 Cal. 3d 341 (1989) ...................................................................................14, 15, 16

*Smith v. Rae-Ventner Law Group*,
    29 Cal. 4th 345 (2002) ......................................................................................2, 17

**Other State Cases**

*Sebago v. Boston Cab Dispatch, Inc.*,
　471 Mass. 321 (2015) ............................................................................................17

**Federal Statutes**

29 U.S.C.
　§ 213(a)(1) ............................................................................................................21
　§ 216(b) .................................................................................................................21

**California Statutes**

Cal. Code Regs
　§ 13520 ............................................................................................................17, 18

Cal. Lab. Code
　§ 203 .............................................................................................................2, 17, 18
　§ 226 .............................................................................................................2, 18, 19
　§ 226(a) .........................................................................................................18, 19
　§ 226(e) .................................................................................................................18
　§ 1171 ....................................................................................................................21
　§ 2810.3 ..................................................................................................2, 10, 19

**Other Authorities**

29 C.F.R. § 541.500 ..................................................................................................21

29 C.F.R. § 541.501(b) .............................................................................................22

29 C.F.R. § 541.502 ..................................................................................................22

10A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2712 (4th ed. 2016) .....................10

Fed. R. Civ. P. 11 .......................................................................................................9

Fed. R. Civ. P. 56 .....................................................................................................10

P&A ISO COSTCO'S MOTION FOR SUMMARY JUDGMENT

# NOTICE OF MOTION

On December 20, 2019, at 2:00 p.m. or as soon thereafter as the matter can be heard at 1301 Clay Street, Oakland, California, Defendant Costco Wholesale Corporation will move for summary judgment against the Plaintiff, Sigrid Williams. This motion relies on this notice, the memorandum in support, the declarations of Greg Carter, David Kadue, Julie Nichols, Sarah Rajski, and Dawn Vetter and exhibits thereto (including cited deposition testimony), all papers on file, and arguments of counsel.

## RELIEF SOUGHT

1.      Costco is entitled to judgment on all claims against it because Costco was not Plaintiff's employer under the *Martinez* standard, and the *Dynamex* standard does not apply in a case such as this, as the Ninth Circuit recently confirmed in *Salazar v. McDonald's*.

2.      The Section 203 penalty claim additionally fails, under *Smith v. Rae-Ventner Law Group*, because Costco in good faith reasonably believed it was not Plaintiff's employer and did not owe her wages when she left employment.

3.      The Section 226 penalty claim additionally fails, under *Boyd v. Bank of America,* because Costco did not knowingly and intentionally fail to provide wage statements required of an employer.

4.      The Section 2810.3 claim fails because the statutory terms don't apply: the companies that retained Plaintiff to provide services—Flair and Nichols—were not "labor contractors" that supplied her as a worker to Costco as a "client employer" within its "usual course of business."

5.      The FLSA claim fails because, under the Ninth Circuit's *Bonnette* test, Costco was not Plaintiffs' employer and because Costco reasonably and in good faith believed that it was not her employer.

6.      All claims fail in any event because, under *Moore v. Int'l Cosmetics & Perfumes*, Plaintiff qualified as an exempt outside salesperson.

DATED: November 12, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By:    /s/ Jinouth D. Vasquez Santos
Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

1

### SUMMARY OF ARGUMENT

2   Sigrid Williams, a salesperson, represented suppliers during ten-day "roadshows" at Costco retail

3   locations ("warehouses"). As a roadshow representative, she demonstrated suppliers' products to induce

4   shoppers to buy them from Costco. She would staff a warehouse roadshow one week and then

5   demonstrate the same products (or a different supplier's products) at another warehouse the next week.

6   Costco and roadshow suppliers set forth the framework for roadshows in Special Events

7   Agreements, which make the supplier—not Costco—responsible to assign the roadshow reps. Suppliers

8   either use their own workers as roadshow reps or have a staffing agency supply them. Costco itself does

9   not hire, assign, schedule, train, discipline, supervise, evaluate, or pay the roadshow reps.

10   Williams was hired by supplier-selected staffing agencies: first Flair (which retained her as an

11   independent contractor) and then Nichols (which retained her as an employee). Williams, invoking both

12   California law and the Fair Labor Standards Act, claims unprovided meal and rest breaks, unpaid wages

13   and employee expenses, inadequate wage statements, and untimely termination wages. She sued Flair

14   and Nichols (now both dismissed) and she also sued Costco, as a "joint employer."

15   Costco is entitled to summary or partial summary judgment against Williams because:

16   1.  Costco was not her employer under the *Martinez* standard.

17   2.  The *Dynamex* standard does not apply and Costco in any event would not be an employer

18   under *Dynamex. Salazar v. McDonald's Corp.*

19   3.  The Section 203 claims because Costco in good faith believed it was not Williams's

20   employer. *Smith v. Rae-Ventner Law Group.*

21   4.  The Section 226 claim fails because Costco did not knowingly and intentionally fail to

22   provide required wage statements. *Boyd v. Bank of America Corp.*

23   5.  The Section 2810.3 claim fails because Flair and Nichols were not "labor contractors"

24   supplying Williams as a worker to a "client employer" within its "usual course of business."

25   6.  The FLSA claim fails because Costco was not Williams's employer, under *Bonnette*, and has

26   no liability for liquidated damages, because Costco reasonably believed it was not her employer.

27   7.  Costco has no liability on any claim, because Williams was an exempt outside salesperson.

28   *Moore v. Int'l Cosmetics & Perfumes.*

**FACTUAL BACKGROUND**

**Costco's usual course of business is in-line sales.** Costco operates retail warehouses to sell quality goods to Costco members. Costco buys goods in bulk at discounted prices and shares its savings when reselling those goods to Costco members, using Costco warehouse employees. Vetter Dec. ¶ 4.

**Costco employees conducting in-line sales share fundamental characteristics.** *Hiring, firing.* Costco non-exempt employees have completed written job applications. Costco has interviewed them and offered them jobs. Costco promises job security to all employees passing a 90-day probationary period, firing only for good cause, and employees with two years of service can be fired only after review by a senior manager above the warehouse level. Rajski Dec. ¶ 4(a), 4(k).

*Employee indoctrination.* Each Costco warehouse has hundreds of employees, overseen by some 20 managers. Rajski Dec. ¶ 4. Costco issues an Employee Agreement, a 100+-page booklet containing employment policies, and provides employees with written orientation materials. Costco's key policies include its EEO policies and its Open Door policy (which permits employees to report work concerns directly to Human Resources and up the chain of command). Rajski Dec. ¶ 4(c).

*Employee payroll and pay practices.* Costco has nonexempt employees record all hours worked. Costco biweekly pays wages for all recorded hours, and issues itemized wage statements. Costco pays fringe benefits that include a complimentary Costco membership, health insurance benefits, paid sick leave, and holiday and vacation pay. Rajski Dec. ¶ 4(j).

*Direction of work.* For nonexempt employees, Costco schedules 30-minute meal periods and authorizes and permits 15-minute paid rest breaks. Managers and supervisors monitor employee performance and issue discipline, as appropriate. Each employee receives an annual written performance review. Rajski Dec. ¶ 4(e), 4(f), 4(g).

**Suppliers staff roadshows with their own workers or workers assigned by staffing companies.** While Costco in its usual course of business buys goods for in-line resale, using its own employees, Costco also, as a sideline, schedules Special Events ("roadshows"), in which specialty suppliers do consignment sales (the product remaining the supplier's until Costco rings up the sale). These sales constitute less than 0.5% of Costco's warehouse revenue. Roadshows are supplier-sponsored ten-day warehouse events that run from a Friday through the Sunday of the next week. Roadshow

3

suppliers sell their specialty products by stationing workers at Costco to demonstrate products. Roadshow reps thus induce shoppers to buy the supplier's product from Costco. The supplier or its staffing agency—not Costco—selects, trains, and pays the roadshow reps. Vetter Dec. ¶¶ 5-7.

In advance of a roadshow, suppliers ship their product to the selected warehouse and assign workers to build a product display there. The workers disassemble the display at the end of roadshow so the supplier can ship unsold product to the next point of sale. Carter Dec. ¶ 8; Vetter Dec. ¶ 7.

During the roadshow itself, suppliers provide coverage during shopping hours (e.g., 10:00 a.m. to 8:30 p.m. on weekdays). Some suppliers deploy multiple reps to cover a day of roadshow, while others use a single roadshow rep for the entire day. Carter Dec. ¶ 10; Williams Dep. 117:13-19.

**Special Events Agreements.** These agreements—between Costco and each roadshow supplier—stipulate that roadshow reps ("Supplier Agents") are not Costco employees and that the supplier exclusively controls their mode and manner of performance. Vetter Dec. ¶ 10 & Exs. 6-10. These agreements all provide that Costco is not the employer or joint employer of any roadshow rep and that the mode, manner, method, and means of contractual performance are of the supplier's control and direction and are not under any control or direction of Costco. See, e.g., *id.* Ex. 6, § 2.1.

Suppliers promise to honor certain Professional Standards and Guidelines, to protect Costco's service brand. Vetter Dec. ¶ 11. The roadshow reps thus are to do such things as (a) dress professionally (e.g., avoid blue jeans, shorts, T-shirts, ungroomed hair), (b) be courteous to Costco members and employees, (c) observe Costco safety rules, (d) keep their area neat and clean, (e) avoid personal use of cell phones, (f) avoid illegal and other improper behavior and the use of alcohol or illicit drugs, and (g) avoid unauthorized solicitation of customers. Vetter Dec. ¶ 11 & Exhibit A to Exs. 6-10. If a roadshow rep fails to honor service standards, a warehouse manager may notify Costco's buying department, which may then advise the supplier. Carter Dec. ¶ 14; Vetter Dec. ¶ 12. Costco cannot, however, require that a supplier fire roadshow reps; the supplier is free to deploy them elsewhere. Vetter Dec. ¶¶ 7, 12; Nichols Dec. ¶ 15.

**Williams, a marketing professional, was hired by staffing companies—not Costco—to represent roadshow suppliers.** Williams represented suppliers Jack Georges Fine Leather Goods, Bed Voyage, Heirloom Apparel, Elite Massage Chairs, and Goal Zero, at over 29 Costco warehouses. See

4

1   Ex. 11—Williams Interrogatory Responses, No. 4 at 5:15-6:11, No. 5 at 6:25-8:6, No. 10 at 10:16-

2   11:11; Williams Dep. 72:4-21 & Williams Dep. Ex. 106. Her job was "to sell a client's products by

3   providing in-store demonstrations and samples, and to convey her knowledge of each product to

4   prospective customers." Second Amended Complaint ¶ 41, Dkt 47 at 9:4-6.

5          Williams got her work assignments from Flair and then, as of September 2016, from Flair

6   affiliate Nichols.[1] She was an independent contractor for Flair and an employee for Nichols. She usually

7   worked full days for Flair, half-days for Nichols. Williams Dep. 39:3-6. She started with Flair after

8   sending it her resume, touting her "extensive experience selling and exhibiting at trade shows" and her

9   two years of experience selling women's shoes in a Macys department store. Williams Dep. 11:8-13,

10  13:5-23, 15:7-10, 32:6-25, 52:6-10; Williams Dep. Ex. 103 at 2.

11         For each ten-day roadshow, Williams and Flair signed a fill-in-the-blank "Independent

12  Contractor Agreement." For example, she agreed to "perform Services for **Jack Georges** ('Client')

13  during the period of 6/3-6/12, 2016." Williams Dep. 32:10-19, 33:3-19; Williams Dep. Ex. 100 at 2, 5

14  (identifying Costco location #146 at Concord, California, with work schedules for June 3 through June

15  12 and with a two-hour set-up shift scheduled for the evening of June 2).

16         Williams learned of a Flair-to-Nichols transition in August 2016. Williams Dep. Ex. 107 at 2. At

17  that time Flair ceased to retain contractors for work at Costco and Nichols (with the same owners)

18  offered work to Williams as an employee. Williams Dep. 11:24-12:1. The Nichols job application she

19  signed in October 2016 listed her "sales rep" experience with three companies, including Flair Event

20  Models. Williams Dep. 43:13-23 & Dep. Ex. 101 at 1. Nichols issued her an Employee Handbook.

21  Williams Dep. Ex. 122. Under Nichols, work days were split in two, with roadshow reps working

22  partial-day shifts and being required to take breaks. Williams Dep. Ex. 107 at 2.

23         Williams worked for Nichols until May 2017, when she complained about the long travel needed

24  to work in San Leandro, Williams Dep. 69:7-24. She wrote: "[P]lease remove my name from your list of

25  potential reps." Williams Dep. Ex. 105.

26

27

28  [1] Defendants Flair (Flair Event Models, Inc.) and Nichols (Nichols Demos, Inc. and Nichols & Associates, Inc.) are no longer in business and have now been dismissed. Dkt. 62 (Dec. 20, 2018).

1       Meanwhile, she never applied for a job with Costco and Costco never hired her. Williams Dep.

2 44:8-10, 99:24-100:1, 100:2-6.

3       **Williams was trained by Flair or Nichols or a supplier, not by Costco.** Williams did not

4 receive any written policy or other orientation from Costco, or Costco's Employee Agreement or its

5 EEO or Open Door policies. Williams Dep. 89:14-20.

6       Williams was not trained by Costco on how to represent a supplier's brand, but rather received

7 materials from Flair or Nichols or a supplier on her how to sell the supplier's products, Williams Dep.

8 23:5-12, 26:7-15, 142:20-143:4, Williams Dep. Ex. 123, and how to set up and tear down her products

9 display and take inventory. Williams Dep. 137:13-19, 140:7-11, Williams Dep. Exs. 119, 121. Flair or

10 Nichols or a supplier told her about product features. Williams Dep. Exs. 120, 123 (citing material for

11 Elite Message Chairs), 124 (citing Flair-organized training call), 125 at 1 (citing Nichols-provided quiz

12 to "brush up on some key things for the show"). Costco did not give her a sales script for work she was

13 doing at Costco (selling products of the supplier she was representing). Williams Dep. 99:21-23.

14       Costco suppliers promise that roadshow reps will portray an image consistent with Costco's

15 professional brand, such as behaving appropriately and avoiding personal phone calls, chewing gum,

16 and inappropriate clothing. Vetter Dec. ¶ 11 & Exs. 6-10. But Costco never delivered its written

17 expectations directly to Williams. Williams Dep. 89:14-20, 148:23-149:4. Nor did Costco give

18 roadshow reps written performance reviews, as it does for all employees. Rajski Dec. ¶ 4(f), (g). Nor did

19 Costco ever ask that Williams be removed from its premises. Williams Dep. 80:14-21.

20       **Hours were recorded and money was paid by Flair or Nichols, not Costco.** Costco never

21 recorded hours for Williams or had her record hours; that requirement came from Flair and then Nichols.

22 She reported her time, without Costco's input, only to Flair or Nichols. Williams Dep. 15:11-13, 31:13-

23 18. To Flair—not Costco—she submitted her invoices for time worked. E.g., Williams Dep. Ex. 116 at

24 1. To Nichols—not Costco—she submitted a time card. See Williams Dep. Ex. 111. She used her home

25 fax machine, on Mondays following a roadshow, to report her worked hours to Flair. Williams Dep.

26 31:13-18, 32:1-5. No one from Costco signed off on her hours. Williams Dep. 31:5-12.

27       Flair or Nichols, not Costco, set Williams's pay rate, and paid her. Williams Dep. 33:24-34:1,

28 100:10-13. Flair used a daily Pay Sheet listing hours worked, for each client, and how much Flair owed

her (e.g., $135.00 for nine hours representing BedVoyage on September 12, 2015, Williams Dep. Ex. 113). And Nichols, treating her as an employee, issued her wage statements. E.g., Williams Dep. Ex. 115 at 1 (showing pay for pay period encompassing February 21 through March 6, 2017).

Costco, meanwhile, never paid Williams, Williams Dep. 38:2-7, 95:9-11, or gave her fringe benefits such as a complimentary membership, insurance coverage, sick pay, or vacation pay. Williams Dep. 95:12-16. When Williams questioned her pay, she contacted Flair or Nichols, not Costco. See Williams Dep. Ex. 114 at 1 (January 2015 email questioning commissions for Jack Georges show at Concord roadshow), Ex. 117 at 4 (January 2016 email questioning pay for Danville roadshow).

**Williams sent sales reports to Flair or Nichols or the supplier, not Costco.** Williams submitted daily sales results, but not to Costco. Williams Dep. 62:7-9. Costco never had her report her sales to Costco, and she never did. Williams Dep. 101:3-8.

**Williams's work was scheduled by Flair or Nichols, not Costco.** Work schedules (for hours and locations) came from Flair or Nichols, not Costco. Williams Dep. 15:14-18, 33:3-19, 39:3-6, 62:17-20, 62:21-22. And Costco could not forbid her to take meal or rest breaks. Indeed, the Special Event Agreements provide that roadshow reps are to take breaks by supplier policy and the law. Vetter Dec. ¶ 11 & Exhibit A, ¶ 1(c), to Exs. 6, 7, 9, 10. Moreover, Flair and Nichols advised Williams to take meal and rest breaks. Williams Dep. 40:2-17, 105:16-18, 141:3-142:1.

**Williams was never terminated by Costco.** Williams quit her work for Nichols when she grew unsatisfied with its assignments. Williams Dep. 65:4-11, 67:24-68:8. She told Nichols to remove her name from its list of roadshow reps. Ex. 104. She never complained to Costco about her work, and Costco never fired her, Williams Dep. 100:8-9, having never hired her in the first place, Williams Dep. 100:2-6. Nor did Williams notify Costco she had stopped working. Williams Dep. 71:8-12.

## PROCEDURAL BACKGROUND

Williams sued not only Flair and Nichols—the companies that engaged her—but also Costco, as a "joint employer." She pursued her joint-employment theory with these allegations:

> "During her employment with Defendants, Plaintiff was required to report at a specified Costco store at set times to perform her duties." First Amended Complaint ("1AC"), Dkt 12, ¶ 15.

7

"Plaintiff was issued a Costco badge, required to enter the store using the employee entrance, was required to sign in/out on Costco's daily attendance sheet, and was required to comply with Costco's dress policy. For example, Supplier Employees would be sent home by Costco if they did not comply with Costco's dress policy." 1AC ¶ 16.

"Plaintiff was also required to utilize lockers provided by Costco for its employees to store her personal belongings during each shift as Costco did not permit them to carry it around in the store." 1AC ¶ 17.

"From time to time, Plaintiff was even directed by Costco." 1AC ¶ 18.

"During her employment with Defendants, Plaintiff was required to report to Defendant Costco's various locations at set times to perform their duties and use Costco's tools and instrumentalities to perform their duties. Plaintiff made no investment in the equipment or materials used to perform her job duties for Defendants." 1AC ¶ 19.

"Plaintiff was required to be present when the Costco store opened and could not leave until the last customer left the store. This is because when a customer placed an order, they are given a voucher for the product they want to purchase. After paying for the product at the check-out register, a Costco employee would then pick up the product from Plaintiff." 1AC ¶ 20.

"During her employment with Defendants, Plaintiff was required to submit daily sales reports at the end of each night to Defendants and to account for the inventory of products to be sold. Plaintiff used Costco's fax machine to submit her daily reports to Defendants." 1AC ¶ 21.

"Her duties were to sell a client's products by providing in-store demonstrations and samples, and to convey her knowledge of each product to prospective customers. During her employment with Defendants, Plaintiff was required to report at a specified Costco store at set times to perform her duties." 1AC ¶ 23.

"Plaintiff … regularly reported to work at Costco before each roadshow event in order to set up … work areas and to move inventory of each client's products so they would be on hand to be sold and delivered to customers each day." 1AC ¶ 28.

**The Court granted Costco's motion to dismiss, with leave to amend.** The Court granted the motion because the allegations did not show joint employment. Order, Dkt 46 at 5:18-10:21. The Order first considers the three prongs of California's test for employment: (1) control, (2) suffer or permit, and (3) engage. As to alleged control, the Order notes Costco did not influence how much or how Williams was paid, did not dictate how long she worked, and did not schedule her work. Dkt 46 at 6:9-22. Though she was to follow a dress code, use lockers to store personal gear, wear a name badge, use an employee entrance, and sign a vendor log sheet, and though she used a Costco fax machine to transmit sales reports, Costco lacked the power to hire or fire her. *Id.* 7:1-8. As to Costco's "suffering or permitting" work, the Order notes that merely receiving the benefit of work does not establish joint-employer status, *id.* 8:11-12, and that "where a party lacks the power to hire fire, set wages or hours, or tell employees

8

when and where to work, the relationship fails the suffer-or-permit test." *Id.* 8:15-16. As to engagement, the Order notes that while Williams worked at Costco locations and used their fax machines, there was no allegation as to many other factors the "engage" test considers. The Order finds the First Amended Complaint deficient as to California law.

The Order similarly concludes as to federal law. Under the *Bonnette* factors and the *Torrez-Lopez* secondary factors, the allegations supported only an "anemic inference" of Costco exercising *some* control, insufficient to survive a motion to dismiss. *Id.* 9:15-10:21. The Order ends by admonishing Williams "to be mindful of her obligations to this Court under Rule 11 of the Federal Rules of Civil Procedure," should she choose to file an amended complaint. *Id.* 10:25-11:2.

**The Second Amended Complaint ("2AC").** To avoid a renewed motion to dismiss, Williams added boilerplate allegations that she has since disavowed under oath:

- Costco allegedly required her to report to specified stores at set times to work, 2AC, Dkt 47, ¶ 17 at 4:26-27—***but in fact*** she was assigned work schedules by Flair or Nichols, not Costco, Williams Dep. 62:17-20, 62:21-22,

- Costco allegedly required her to "sign in/out" on Costco's "daily attendance sheet," 2AC ¶ 27 at 6:10-11—***but in fact*** Costco did not have her sign out at all, did not have a daily attendance sheet, and simply required visitors entering through the warehouse receiving dock, before business hours, to sign a vendor log, Carter Dec. ¶ 11; Williams Dep. 146:3-6,

- Costco allegedly would send Williams home for violating the dress policy, 2AC ¶ 18 at 5:2-3—***but in fact*** she was not sent home, Williams Dep. 90:19-91:21,

- Costco allegedly required Williams to submit daily sales and inventory reports, 2AC ¶ 23 at 5:23-24—***but in fact*** only Flair or Nichols or the supplier did that, not Costco, Williams Dep. 62:7-9, 101:3-8, 145:9-17,

- Costco allegedly required Williams to follow "Costco sales scripts," 2AC ¶ 29 at 6:15-17—***but in fact*** only Flair or Nichols or a supplier—not Costco—had scripts, Williams Dep. 99:21-23,

- Williams allegedly would be "disciplined or sent home by Costco if [she] failed to comply with the Costco dress code or sales script," 2AC ¶ 29 at 6:19-20—***but in fact*** there was no Costco sales script, she was never handed written directions by Costco, was not disciplined by Costco

9

while she worked for Flair or Nichols, and was not fired or even sent home. Williams Dep.

99:21-23, 100:8-9, 145:23-146:2, 148:7-22, 149:22-25, 151:13-152:2.

## LEGAL STANDARD

Rule 56(a) authorizes summary adjudication when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." A Rule 56 motion aims to "prevent

vexation and delay, improve the machinery of justice, promote expeditious disposition of cases, and

avoid unnecessary trials when no genuine issues of fact have been raised." 10A C. WRIGHT & A.

MILLER, FEDERAL PRACTICE & PROCEDURE § 2712 at 236-38 (4th ed. 2016). The essential inquiry is

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986). The moving party must show the absence of a genuine issue of material fact,

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), but if that happens then the nonmoving party must

produce enough evidence to create a genuine issue. *Id*. at 322-23.

## ARGUMENT

**I.    All California claims against Costco fail because it was not Williams's employer: Costco did not exercise day-to-day control over her, suffer or permit her to work, or engage her.**

Williams admits Costco was not the "employer of record," but nonetheless insists it was her

"joint employer." 2AC ¶ 24, Dkt 47 at 5:27-6:3. This threshold contention is the lynchpin of every

claim.[2] Whether Costco was William's employer depends on whether Costco (A) exercised day-to-day

control over her wages, hours, or working conditions, (B) suffered or permitted her to work, or (C)

engaged her to work, while retaining a general right to control her manner and means of work. *Salazar*

*v. McDonald's Corp.,* 939 F.3d 1051, 1056 (9th Cir. 2019) (applying framework of *Martinez v. Combs,*

49 Cal. 4th 35, 64 (2010)). Costco, as shown below, was not an employer under any *Martinez* prong.

### A.    Costco did not exercise day-to-day control over the work.

Finding employer status under the "control" prong is proper only if a defendant "directly or

indirectly … employs or *exercises control*" over their wages, hours, or working conditions, *Martinez*, 49

---

[2] See allegations regarding meal periods, 2AC ¶ 81-95, rest breaks, 2AC ¶¶ 96-106, wages, 2AC ¶¶ 107-130, expenses, 2AC ¶¶ 131-139, wage statements, 2AC ¶¶ 140-145, final wages, 2AC ¶¶ 146-156, unfair competition, 2AC ¶¶ 157-174, the FLSA, 2AC ¶¶ 175-185, and joint wage liability under Labor Code section 2810.3, 2AC ¶¶ 186-196.

Cal. 4th at 60 (quoting Wage Order, emphasis in original). *Martinez* thus concluded that employer status does not apply where the defendant could influence the treatment of workers but lacked the authority to directly control wages or hiring or firing. *Martinez* held that only the grower himself—and not the defendant fruit buyer—employed harvesters, because only the grower "decided which fields to harvest on any given day and whether to harvest strawberries for fresh market sale or for the freezer," and the grower "alone, with the assistance of his foremen, hired and fired [the harvesters], trained and supervised them, determined their rate and manner of pay, and set their hours, telling them when and where to report to work and when to take breaks." *Martinez*, 49 Cal. 4th at 72. The fruit buyer did not employ the harvesters even though buyer representatives visited harvesters in the field to inspect produce to see that it met buyer quality standards. *Id.* at 45-46.

The Ninth Circuit, applying *Martinez* in *Salazar v. McDonald's Corp.,* affirmed summary judgment against restaurant workers suing McDonald's on wage and hour claims. 939 F.3d at 1057. The plaintiff restaurant workers could not meet the *Martinez* "control" prong even though McDonald's required them to (i) wear prescribed uniform, (ii) present a neat and clean appearance, and (iii) render competent and courteous customer service: "McDonald's involvement … with workers at the franchises is central to … the company's ability to maintain brand standards, but does not represent control over wages, hours, or working conditions."). *Id.* at 1055-56; *see also Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1432-33 (2010) (third-party payroll company was not a joint employer as to wage and hour claims, even though by contract it was "the employer and handle[d] all payment to employees," because "control over wages" means the authority to set pay, and defendant simply processed payroll and did not set wages, schedules, or hire or fire workers).

Williams would invoke the *Martinez* "control" prong by arguing that Costco (a) provided the premises where she worked, (b) gave her Costco name badges, and (c) established rules to follow. 2AC ¶¶ 25-38. This argument fails because Costco's limited actions to ensure compliance with professional standards to protect its brand do not constitute the day-to-day control characterizing an employer. Costco did not control pay, hours worked, selection of work sites, or whether Williams was hired or fired. The relevant control as to alleged employment is control over wages, hours, and working conditions, not over contractual service standards.

1    Several cases make this point. *McDonald v. Shell Oil Co.*, 44 Cal. 2d 785, 790 (1955), held that

2  an owner can "retain a broad power of supervision and control as to the results of the work so as to

3  insure satisfactory performance of the independent contractor—including the right to inspect, the right to

4  stop the work, the right to make suggestions or recommendations as to details for the work, the right to

5  prescribe alterations or deviations in the work—without changing the relationship from that of owner

6  and independent contractor or the duties arising from that relationship." Similarly, *Doe I v. Wal-Mart*

7  *Stores, Inc.*, 572 F.3d 677, 682-83 (9th Cir. 2009), held that Walmart-imposed contractual obligations as

8  to deadlines, product quality, material use, and prices—with Walmart monitoring operations to

9  determine supplier compliance—did not amount to such control of working conditions as to make

10  Walmart a joint employer of supplier employees.

11    Costco's insistence on certain rules for supplier sales representatives interacting with Costco

12  members does not show employment. "Imposition of requirements or oversight of workers' performance

13  is not enough to make the overseeing entity a joint employer absent hiring and firing power." *Johnson v.*

14  *Serenity Transportation, Inc.,* 141 F. Supp. 3d 974, 998 (N.D. Cal. 2015); *Ochoa v. McDonald's Corp.*,

15  133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015) ("California courts have [denied] employer liability for

16  entities that may be able to *influence the treatment of employees* but lack the authority to directly control

17  their wages, hours or conditions."); *Bright v. Dennis Garber & Associates*, No. CV 10-07933-AHM-

18  JCx, 2011 WL 13085923, at *3-5, 6, 9 (C.D. Cal. May 13, 2011) (under *Martinez*, Ralphs grocery not an

19  "employer" of third-party product demonstrators working on Ralphs premises even though Ralphs

20  dictated "what to bring, what to wear, what would be at the store and how to activate the debit cards,"

21  because Ralphs did not provide training, did not set or pay wages, and did not directly supervise product

22  demonstrations).

23    Similarly here, Costco's creation of service standards did not constitute the requisite level of

24  "control." Even if Costco told suppliers which entrance to use, told them to sign in on a vendor log,

25  provided a name badge, and told workers to use a locker for personal items, those actions are akin to

26  enforcing brand-service standards, and do not evidence the "control" required to impose joint employer

27  liability. And even though Williams says Costco could send her home for failing to comply with its

28  dress policy, there is no proof that such a removal would affect her contract with third-party suppliers so

as to constitute a "firing." *See Johnson*, 141 F. Supp. 3d at 999 (even though customer defendant could request that drivers no longer perform pickups at a location, this did not affect driver's employment).

Costco did not retain Williams to work; she did not apply for employment with Costco; she did not undergo a Costco job interview; she did not get a Costco job offer. Instead, she applied to Flair and Nichols. She received orientation materials from Flair or Nichols or a supplier, not Costco. She did not receive Costco's Employee Agreement. She did not receive training on Costco employment policies.

Costco did not control how Williams promoted sales for the suppliers that Flair or Nichols assigned her to represent. Costco did not train her on how to sell supplier product. Instead, Flair or Nichols or the suppliers told Williams how to set up Special Events, how to merchandise particular goods, and how to pack and return unsold product. Costco did not schedule her work and did not prevent her from accepting other jobs. In fact, before a Special Event, Costco would not know how many roadshow reps a supplier would assign, would not know what hours a particular roadshow rep would work, and would not even know whether roadshow reps were the supplier's own employees or talent supplied by a staffing company. Costco would not even necessarily know a roadshow rep's full name or other identifying information. The assignments on where to work, and when, came from Flair or Nichols, not Costco. Carter Dec. ¶ 10; Vetter Dec. ¶ 10; Rajski Dec. ¶ 5.

Nor did Costco set the rate of Williams's pay, or pay her. Flair or Nichols or the supplier, not Costco, did all of that. Indeed, when Williams went unpaid, she contacted Flair or Nichols to complain, not Costco. Williams Dep. 91:19-21.

While Costco did provide floor space for roadshows and did have suppliers promise to uphold certain service standards—avoid personal phone calls, don't chew gum, don't eat on the floor, don't wear inappropriate clothing, etc.—this kind of limited activity to maintain a service brand is not enough to establish the day-to-day control required to impose employer liability.

### B.   Costco did not suffer or permit Williams to work.

A finding of employer status under the "suffer or permit" prong is proper only if a defendant knowingly benefitted from the plaintiff's work **and** directly controlled whether she could work. *Curry v. Equilon Enterprises, LLC*, 23 Cal. App. 5th 289, 311-12 (2018), held that a gas station owner (Shell) was not the station manager's joint employer, on a "suffer or permit" basis, because the station

operator—not the station owner—would hire, fire, and assign the station manager. *Id.* at 311. Likewise, *Martinez* rejected an employment claim because the defendants, though knowingly benefitting from the plaintiffs' work, did not hire or fire them or set or pay their wages. *Martinez*, 49 Cal. 4th at 70 ("neither [defendant] suffered or permitted Williams to work because neither had the power to prevent Williams from working. Munoz and his foremen [not the defendants] had the exclusive power to hire and fire his workers, to set their wages and hours, and to tell them when and where to report to work"). *Martinez* observed that while the defendants certainly could have used their economic power to force a layoff, that power inhering in the "business relationship" was insufficient to make the buyers an employer under the suffer-or-permit prong. *Id.* at 70. *See also Futrell*, 190 Cal. App. 4th at 1434 (affirming summary judgment against FLSA and Labor Code claims where defendant payroll company was not a joint employer, even though it controlled wages by calculating pay and taxes and issuing paychecks; company lacked power to either cause plaintiff to work or prevent him from working).

Similarly, here, Costco cannot be a joint employer, as Costco did not select Williams, set her pay, assign and schedule her work, or terminate her employment. *See also Salazar,* 939 F.3d at 1057-58 (affirming summary judgment against wage and hour claims of restaurant workers suing franchisor McDonald's, because McDonald's was not the workers' employer under a suffer-or-permit theory, despite the power it had through the franchising relationship).

**C.    Costco was not Williams's common law employer, as it did not engage her.**

A finding of employer status under the "engage" prong is proper only if a defendant reserved a general right to control the manner and means of performing the work. *Ayala v. Antelope Valley Newspapers, Inc.,* 59 Cal. 4th 522, 528 (2014) (citing *S. G. Borello & Sons, Inc. v. Department of Industrial Relations,* 48 Cal. 3d 341, 350 (1989)). Thus, in *Wynn v. National Broadcasting Co.,* 234 F. Supp. 2d 1067, 1093-94 (C.D. Cal. 2002), for example, the court dismissed joint-employment claims for failure to show the defendant had "authority to control, supervise, hire and fire, discipline, pay or keep employee records for each other's employees."

Similarly here, Williams cannot show Costco had authority "to control, supervise, hire and fire, discipline, pay or keep employee records" for her. Flair or Nichols—not Costco—engaged Williams and gave her work. Flair or Nichols—not Costco—scheduled her hours and set her pay. Costco, meanwhile,

14

1  was two steps removed, with no contractual relationship with Flair or Nichols. Costco contracted instead

2  with suppliers that in turn retained Flair or Nichols. And the Special Events Agreements gave suppliers

3  exclusive control over hiring, firing, wages, hours, and day-to-day management of supplier

4  representatives. These facts provide no basis to find employer status under the "engage" prong of

5  *Martinez. See, e.g., Salazar,* 939 F.3d at 1057 (affirming summary judgment against worker suing

6  McDonald's on wage and hour claims, where franchisee, not McDonald's, had the contractual power

7  over the day-to-day aspects of work).

8       Where a party does not "retain[] or assume[] a general right of control over factors such as

9  hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace

10  behavior" of employees, it cannot be deemed to have engaged employees. *Id.* at 1059. Here, any

11  "exercise of control over the means and manner of work performed … is geared specifically toward …

12  maintenance of brand standards. *Id.* Costco simply set guidelines for suppliers—dress code, no eating on

13  the sales floor etc.—and did not hire, fire, train, discipline, supervise, or otherwise control day-to-day

14  aspects of the reps' working conditions. Costco cannot be deemed to have engaged Plaintiff, because it

15  did not have the right to hire, fire, discipline, supervise or control her day-to-day work.

16       Considering the *Borello* secondary factors, as this Court has (see Order, Dkt 46 at 8:24-9:14)

17  would not change this result. As a threshold matter, it is not clear that these factors apply to a wage

18  claim against an alleged joint employer. *See Martinez*, 49 Cal. 4th at 73 ("Assuming the decision in *S.G.*

19  *Borello* … has any relevance to wage claims, a point we do not decide … ."). These secondary factors

20  include (a) whether the worker engages in a "distinct occupation," (b) whether the work is done under

21  direction or by a specialist without supervision, (c) the skill required, (d) who supplies the tools and

22  place of work, (e) the length of time for which services are performed, (f) the method of pay (by time or

23  job), (g) whether the work is part of the defendant's "regular business," and (h) whether the parties

24  believed they were creating an employment relationship. *S.G. Borello & Sons, Inc. v. Dep't of Indus.*

25  *Relations*, 48 Cal. 3d 341, 350 (1989).

26       Applied here, these factors could not overcome Costco's lack of a general right of control. It is

27  true that (d) Costco supplied the place of work. But it is also true that Costco could not fire Williams and

28  (a) she was in the occupation of sales specialist, (b) selling product without supervision, (c) with a

1  specialized knowledge of the product and a skill in selling it, (e) working in temporary ten-day stints, (g)

2  in a unique sideline, not part of Costco's usual course of in-line sales, and (h) under either an

3  independent contractor or as an employee of a separate company—Nichols—not Costco. And while her

4  pay was by the day or by the hour, the method of payment is not a factor truly applicable to a joint

5  employment situation, which is a further reason to doubt whether the *Borello* secondary factors should

6  be applied to a wage claim against an alleged joint employer in the first place.

7    Costco admittedly was not Williams's employer of record. She cannot show that Costco was

8  nonetheless her employer under any of the three prongs of *Martinez.*

9  **II.** **Nothing in *Dynamex* salvages Williams's claims.**

  **A.** ***Dynamex* does not apply.**

10    Although the California Supreme Court in *Dynamex Operations West, Inc. v. Superior Court*, 4

11  Cal. 5th 903 (2018), adopted an "ABC test" to determine employer status of a "hiring entity" that has

12  classified workers as independent contractors, *Dynamex* does not apply here, as Costco never hired

13  Williams. The California Court of Appeal confirmed that *Dynamex* does not extend to joint-employer

14  allegations. *Curry v. Equilon Enterprises, LLC*, 23 Cal. App. 5th 289, 314 (2018) (stating, in affirming

15  summary judgment for defendant alleged to be the plaintiff's joint employer, that it "does not appear

16  that the Supreme Court intended for the 'ABC' test to be applied in joint employer cases"). The Court of

17  Appeal reaffirmed that result in *Henderson v. Equilon Enterprises*, LLC, No. A151626, 2019 WL

18  4942458, at *10-11 (Cal. Ct. App. Oct. 8, 2019), concluding that the *Dynamex* ABC test "does not fit

19  analytically with and was not intended to apply to claims of joint employer liability." *Id.* (affirming

20  summary judgment for defendant alleged to be a joint employer). The Ninth Circuit, meanwhile, has

21  held, quite broadly, that *Dynamex* has "no bearing" where, as here, "no party argues" the plaintiff is an

22  independent contractor. *Salazar,* 939 F.3d at 1058. (Williams, of course, contends she was an employee,

23  not an independent contractor, and Costco for purposes of this motion does not deny that contention).

24    **B.** **All claims in any event would fail under *Dynamex*.**

25    Although *Dynamex* thus does not apply, Costco, out a sense of completeness, addresses

26  *Dynamex*, which would require a defendant to show (A) the worker was free from the control and

27  direction of work, (B), the worker performed beyond the usual course of business; and (C) the worker

28

customarily engaged in an independently established occupation of the same nature as the work performed. *See Dynamex*, 4 Cal. 5th at 958. Each point is demonstrated here.

### 1.    Freedom from control and direction in connection with performance of work

As discussed above in Section I.A., Costco did not control Williams's work and for this reason part A of *Dynamex* would be satisfied, were *Dynamex* to apply (which it does not).

### 2.    Performing work beyond the usual course of Costco's business

Because Williams did not sell in-line merchandise but rather sold specialty products unique to roadshows, she was not engaged in Costco's usual course of business. *Dynamex* indicates that examining the defendant's usual course of business will consider "the purported employer's own definition of its business," the "primary purposes" of the business, whether the work being performed is "necessary" or "incidental" to the putative employer, and "other indicia." *Sebago v. Boston Cab Dispatch, Inc.,* 471 Mass. 321, 333 (2015) (issue is whether "the service the individual is performing is necessary to the business of the employing unit or merely incidental"). Costco's roadshows are not necessary to its usual business, as roadshows contribute less than one percent of Costco warehouse sales. Vetter Dec. ¶ 5. Part B of *Dynamex* would thus be satisfied, were *Dynamex* to apply (which it does not).

### C.    Customarily engaged in independent occupation

Because Williams was not initiated into the sales demonstration business by Flair and Nichols but rather was a pre-established product demonstrator, she was customarily engaged in an independent occupation and for this reason part C of *Dynamex* would be satisfied, were *Dynamex* to apply (which it does not).

### III.    The Section 203 penalty claim fails because Costco, in good faith, believed that it was not Williams's employer and did not owe her wages.

Williams seeks Section 203 "waiting time" penalties because of a willful failure to pay termination wages. 2AC ¶¶ 140-145. But such penalties do not lie where, as here, the defendant in good faith disputes the underlying claim. *See Smith v. Rae-Ventner Law Group,* 29 Cal. 4th 345, 354 n.3 (2002) ("good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203," citing 8 Cal. Code Regs § 13520).

**A.   Costco reasonably believed it was not Williams's employer.**

"No generally applicable rule of law imposes on anyone other than the employer a duty to pay wages." *Martinez v. Combs,* 49 Cal. 4th 35, 49 (2010). "A good faith belief in a legal defense," which "will preclude a finding of willfulness," if the defense "would preclude any recover[y] on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Armenta v. Osmose, Inc*., 135 Cal. App. 4th 314, 325 (2005); 8 Cal. Code Regs § 13520; *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008).

Costco operated under the reasonable belief—recited in the Special Events Agreements—that roadshow reps were either employees or contractors of the supplier, not employees of Costco. The suppliers selected who would staff Special Events. The Agreements explicitly state (see Vetter Dec. ¶ 10, Exs. 6-10) that Costco does not employ any supplier representative and that the supplier, not Costco, selects, controls, and directs roadshow reps. Costco reasonably believed it was not the roadshow reps' employer.

**B.   There was in any event no willful failure to pay wages upon termination.**

"Willful" here means an employer "intentionally failed or refused to perform an act … *required to be done*." *Barnhill v. Robert Saunders & Co*., 125 Cal. App. 3d 1, 7 (1981) (emphasis in original). This situation differs from one where an admitted employer fails to pay. Section 203 "contemplates that the penalty shall be enforced against an employer who is at fault. It must be shown that *he owes the debt and refuses to pay it*." *Manford v. Singh*, 40 Cal. App. 700, 703 (1919) (quoted in *Barnhill*) (emphasis supplied). Costco's good faith defense here is not simply that Williams was not its employee. Costco also lacked notice that she had left her employment with Nichols. Costco thus could not have intentionally failed to pay any wages she had due upon any termination of employment.

**IV.   The Section 226 claim fails because Costco did not knowingly or intentionally fail to provide wage statements required of Williams's employer.**

Williams seeks Section 226 penalties because Costco never gave her wage statements with certain itemized information. 2AC ¶¶ 140-145. But Section 226 requires only *employers* to provide wage statements. And a predicate to Section 226 recovery is "knowing and intentional failure" causing "injury." Lab. Code § 226(e). Thus, a Section 226 plaintiff must adduce "something more than a violation of Section 226(a) alone": "a showing that the defendant knew that facts existed that brought its

18

1   actions or omissions within Section 226(a)]." Accordingly, a Section 226 defendant does not knowingly

2   and intentionally fail to provide adequate wage statements if it believes in good faith that it is not an

3   individual's employer and that it owes no duty under Section 226. *Boyd v. Bank of America Corp*., 109

4   F. Supp. 3d 1273, 1308-09 (C.D. Cal. 2015) ("good faith defense precludes [Section 226] liability ...

5   because the defendant arguably had no way of knowing that its conduct was unlawful"). "Penalizing

6   employers who, in good faith …, believe that their independent contractors are exempt, and on that basis

7   do not comply with § 226, is inconsistent with the requirement that a violation be "knowing and

8   intentional." *Id.*[3]

9           Therefore, even if Costco were a joint employer, it would still not be liable for Section 226

10  penalties, as Costco would not know that Williams was its employee.

11  **V.     The Section 2810.3 claim fails because Costco was not a client employer supplied with labor from a labor contractor.**

12          Williams claims that Flair and Nichols were labor contractors liable for unpaid wages and that

13  Costco, under Labor Code section 2810.3, was a "client employer that "share[s] with a labor contractor

14  … liability for all workers supplied by that labor contractor for … the payment of wages." 2AC ¶¶ 186-

15  196. This claim fails because neither Flair nor Nichols qualifies as a "labor contractor" in this context.

16  Section 2810.3 does not define "labor contractor" simply as an entity that supplies labor. Rather, a

17  "labor contractor" is an entity that "supplies … a *client employer* with workers to perform labor within

18  the client employer's *usual course of business*." Lab. Code § 2810.3(a)(3) (emphases added). Here, Flair

19  and Nichols supplied Williams *to suppliers*, not *to Costco*. Indeed, the relevant contracts identify the

20  "client" as the supplier, not Costco. See, e.g., Williams Dep. Ex. 100 at §1 (independent contractor fill-

21  in-the-blank agreement).

22          Moreover, Williams did not work in Costco's usual course of business. Costco itself does not

23  demonstrate specialty products during roadshows; Costco outsources that function to roadshow

24  suppliers. Williams thus was not a temporary worker hired to relieve Costco employees performing

25

26  _____

27  [3] *See also Apodaca v. Costco Wholesale Corp*., No. CV 12-5664-DSF-Ex, 2014 WL 2533427, at *3 (C.D. Cal. June 5, 2014) ("Where an employer has a good faith belief that it is not in violation of Section 226, any violation is not knowing and intentional."); *Hurst v. Buczek Enters*., 870 F. Supp. 2d 810, 829 (N.D. Cal. 2012) (granting summary judgment against Section 226 penalty claim).

28

ordinary duties. Rather, she worked in sporadic ten-day roadshows, ancillary to Costco's core business, demonstrating specialty products—something Costco employees don't do.

## VI. The FLSA claim fails because Costco in good faith reasonably believed it was not Williams's employer.

Williams sues for minimum and overtime wages under the FLSA. 2AC ¶¶ 175-185. To be liable, an FLSA defendant must be the plaintiff's "employer" in light of "economic realities," giving particular attention to the *Bonnette* factors: whether the defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). None of those factors apply here.

Nor could Williams show FLSA joint employment under the eight factors that *Torres-Lopez v. May*, 111 F.3d 633 (9th Cir. 1997) said may also be relevant: (1) whether the work was a specialty job on the production line, (2) whether responsibility under farm labor contracts pass from one labor contractor to another without material changes, (3) whether the defendant's premises and equipment of are used for the work, (4) whether the worker has a business organization that could shift as a unit from one worksite to another, (5) whether the work is piecework and does not require initiative, judgment, or foresight, (6) whether the worker has an opportunity for profit or loss depending upon managerial skill, (7) whether there is permanence in the working relationship, and (8) whether the service rendered is an integral part of the defendant's business. *Id.* at 639. Those factors, identified in a case involving a cucumber grower and a farm labor contractor, have uncertain application here. Suffice it to say that while the work was done on Costco premises, Williams was engaged as a specialized salesperson for ten-day stints that were a sideline to Costco's main business of in-line sales.

Williams thus cannot show joint employment under the FLSA. Flair and Nichols—not Costco— hired her, set her pay, paid her, and scheduled her work. While she says she signed Costco attendance sheets, 2AC ¶ 18, in fact roadshow reps simply signed in on a vendor's log, maintained for security reasons, not payroll reasons; there was no sign-out procedure, Williams Dep. 146:3-6, and Costco did not record roadshow rep work hours. Carter Dec. ¶ 11. Moreover, there was no permanence to Williams's work. She was on call with Flair and then with Nichols for ten-day assignments at various

work locations. Costco did not and could not fire her. *Salazar*, 939 F.3d at 1057 (finding that the station owner, Shell, did acquiesce to the station manager's employment because it was not in a position to terminate him or hire someone to replace him and, thus, did not suffer or permit him to work).

Under these circumstances, Costco, as a matter of law, was not Williams's joint employer. It follows with greater force that Costco could not be liable for FLSA liquidated damages, as it has a reasonable basis to believe it was not her employer. An FLSA plaintiff may recover liquidated damages only if the violation was willful. 29 U.S.C. § 216(b). An employer willfully violates the FLSA only if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "Reckless disregard ... involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Damassia v. Duane Reade, Inc.*, 2005 U.S. Dist. LEXIS 9768, at *7 n.2 (S.D.N.Y. May 20, 2005). A willful violation requires more than mere negligence. *Ackler v. Cowlitz County*, 7 Fed. Appx. 543, 546-547 (9th Cir. 2001) ("Supreme Court has made it clear that mere awareness of the FLSA is not sufficient to prove willfulness and that it is also not "willful" if an employer acts unreasonably, but not recklessly.").

**VII.     Williams was in any event an exempt outside salesperson.**

The FLSA exempts outside sales employees. 29 U.S.C. § 213(a)(1); 29 C.F.R. §§ 541.500-504. Employers invoking this exemption must prove the employee (A) had a primary duty of "making sales" or "obtaining orders" and (B) was "customarily and regularly engaged away from the employer's place … of business." 29 C.F.R. § 541.500. California's "outside sales" exemption covers all wage and hour requirements, including overtime pay, minimum wage, and meal and rest breaks, Cal. Lab. Code § 1171, and, like the FLSA exemption, defines "outside salesperson" as anyone who "customarily and regularly works more than half the working time away from the employer's place of business selling … items or obtaining orders or contracts for products." Wage Order No. 7-2001 § (2)(J). Section 1(C) says the outside sales exemption applies to the entire wage order. An employee can qualify as an exempt outside salesperson even if misclassified as an independent contractor. *E.g.*, *Moore v. Int'l Cosmetics & Perfumes*, No. ED CV 14-1179-DMG, DTBx, 2016 WL 3556610, at *7 (C.D. Cal. 2016) (granting

summary judgment on basis of outside-sales exemption to employer that classified the plaintiff as an independent contractor).

### A.    Williams made sales and obtained orders.

An outside salesperson's primary duty must be "making sales" or "obtaining orders." "Making sales" can include any transaction involving the sale of goods. 29 C.F.R. § 541.501(b). In a closely analogous case, a federal district court dismissed a claim on summary judgment because fragrance sales consultants ("FSCs") assigned to retail stores to sell their employer's perfumes satisfied the primary-duty requirement. *Moore*, 2016 WL 3556610 at *6. The FSCs rotated among stores in assigned regions and interacted with customers to sell perfumes. Customers who wanted to buy were directed to the retail store counter, where a store employee rang up the sale. Although they did not work for commissions, the FSCs made sales or obtained orders and thus qualified as salespeople. *Id.* at *7.

Williams was so engaged here. She induced Costco shoppers to buy her supplier's products. Like the *Moore* FSCs, she would direct customers to the store's cash register to make a purchase. Shoppers would place an order to get a voucher for the products they wanted to buy, and would then pick up the product from her after paying for it. 2AC ¶ 22, Dkt 47 at 5:18-20. Her activities thus aimed toward the consummation of her own sales. She sold to shoppers who would lack access to the product but for her presence. Vetter Dec. ¶ 5. Demonstrating product to induce shoppers to buy it at the Costco cash register effects the shopper's "commitment to buy."

### B.    Williams customarily worked away from her employer's place of business.

Costco, as an alleged joint employer, should be entitled to invoke the same defenses available to the employer of record. Among them would be the "outside sales" exemption. An employee is away from her employer's place of business when she displays product in hotel sample rooms or at trade shows. The FLSA recognizes that trade shows of short duration (one or two weeks) should not be considered as the employer's place of business. See 29 C.F.R. § 541.502. In 2008 the U.S. Department of Labor opined that employees selling novelty items at retail stores for three to six days at a time were away from the employer's pace of business because "the sites are retail stores." FLSA2008-6NA (May 8, 2008) ("The locations where the salesperson sells novelty items are fixed sites, but would not be considered the employer's place of business because the salesperson remains there for only a short time

period (approximately three to six days), and the sites are retail stores.").

Here, Williams appeared at ten-day roadshows that variously appeared at one Costco warehouse or another, while she did not permanently appear anywhere. Williams Dep. 13:1-4. She customarily and regularly worked away from Flair and Nichols's place of business. Nichols Dec. ¶¶ 6, 12, 13; Williams Dep. 13:1-4.

## CONCLUSION

Costco is entitled to summary judgment because there is no triable issue that Costco was the joint employer of Williams or that Flair or Nichols was a labor contractor that supplied Williams to Costco as a client employer to work within its usual course of business. Moreover, Williams in any event qualified as an exempt outside salesperson. For all these reasons the Second Amended Complaint should be dismissed in its entirety and judgment should be entered in favor of Costco.

DATED: November 12, 2019                    Respectfully submitted,

                                            SEYFARTH SHAW LLP


                                            By:  /s/ Jinouth D. Vasquez Santos
                                                 David D. Kadue
                                                 David D. Jacobson
                                                 Jinouth D. Vasquez Santos
                                                 Attorneys for Defendant
                                                 COSTCO WHOLESALE CORPORATION

56691162v.5

P&A ISO COSTCO'S MOTION FOR SUMMARY JUDGMENT