UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIGRID R. WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Case No.  18-cv-00884-JSW<br><br>**ORDER GRANTING DEFENDANT COSTCO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 63 |

Now before the Court for consideration is Defendant Costco Wholesale Corporation's ("Costco") motion for summary judgment.  The Court has considered the parties' papers, relevant legal authority, and the record in this case and finds this motion suitable for disposition without oral argument.  *See* N.D. Cal Civ. L.R. 7-1(b).  For the reasons set forth below, the Court HEREBY GRANTS Costco's motion for summary judgment.

## BACKGROUND

**A.  Procedural History.**

In her first amended complaint, Plaintiff Sigrid Williams ("Plaintiff" or "Ms. Williams") asserted causes of action under the California Labor Code and the Fair Labor Standards Act ("FLSA") against Defendants Flair Event Models, Inc. ("Flair"), Nichols Demos, Inc., and Nichols & Associates, Inc. ("Nichols") and against Costco based on a joint-employer theory of liability.  Costco moved to dismiss the first amended complaint on the basis that Ms. Williams had failed to allege facts establishing that Costco was her joint employer.  (Dkt. No. 21.)  The Court granted Costco's motion to dismiss, with leave to amend, finding Plaintiff's allegations were insufficient.  (Dkt. No. 46.)  On July 18, 2018, Ms. Williams filed a second amended complaint in which she asserted additional allegations about her relationship with Costco.  (Dkt. No. 47.)

United States District Court
Northern District of California

1  Costco answered the second amended complaint on July 28, 2018.  (Dkt. No. 48.)  On December

2  20, 2018, the Court granted the parties' stipulation dismissing Flair and Nichols from the action

3  leaving Costco as the sole remaining defendant.  (Dkt. No. 62.)  Costco filed this motion for

4  summary judgment on November 12, 2019.  (Dkt. No. 63.)

5  **B.  Factual History.**

6  　　　　Defendant Costco operates retail warehouses to sell goods to Costco members.

7  (Declaration of Dawn Vetter ("Vetter Decl."), ¶ 4.)  Costco's usual course of business is to buy

8  goods in bulk at discounted prices and then resell those goods to Costco members.  (*Id*.)  Costco

9  warehouse employees, who are subject to certain hiring and training policies and requirements, are

10  responsible for selling these goods at Costco warehouses.  (Declaration of Sarah Rajski ("Rajski

11  Decl."), ¶ 4.)

12  　　　　In addition to reselling goods, Costco will sometimes contract with suppliers to put on

13  special events, or "roadshows," at Costco warehouses.  (Vetter Decl., ¶ 5; Declaration of Greg

14  Carter II ("Carter Decl."), ¶ 5.)  During a roadshow, a supplier will set up a station at a Costco

15  warehouse to demonstrate its products to Costco members hoping to entice Costco members to

16  purchase the product from Costco.  (Vetter Decl., ¶¶ 5-7).  A roadshow supplier ships its goods to

17  a designated Costco warehouse in advance of the roadshow and selects representatives to

18  merchandise the products during the roadshows.  (*Id.*; Carter Decl., ¶10.)  The supplier's roadshow

19  representatives are responsible for setting up the product display before the roadshow, manning

20  the display during the roadshow, and disassembling the display at the end of the roadshow.

21  (Carter Decl., ¶ 8.)  Costco does not select, hire, or train the roadshow representatives.  (*Id*., ¶ 11;

22  *see also* Declaration of David D. Kadue, ("Kadue Decl.") ¶ 4, Ex. 12 (Deposition of Sigrid

23  Williams ("Williams Depo.") at 26:7-11.)  However, Costco expects roadshow representatives to

24  abide by Costco's professional standards and rules governing signage and displays.  (Carter Decl.,

25  ¶¶ 13-14.)

26  　　　　The relationship between a roadshow supplier and Costco is governed by the terms of the

27  Special Events Agreement, which each supplier executes prior to a roadshow.  (Vetter Decl., ¶ 9,

28  Exs. 6-10 (Special Events Agreements).)  The standard terms of the Special Events Agreement

United States District Court
Northern District of California

1  provide that the agreement is not intended to create an employment relationship between Costco

2  and the supplier's representatives and that each supplier will use its own employees, independent

3  contractors, or employees of third-party staffing companies to work at a roadshow.  (*Id.*, ¶ 10; Exs.

4  6-10.)  The supplier also agrees that its roadshow representatives will comply with Costco's

5  professional standards and guidelines during the roadshow.  (*Id.*)

6          Flair and Nichols were third-party staffing companies providing salespersons to product

7  suppliers who would sell the suppliers' products at retail locations, including at roadshows at

8  Costco warehouses.  (Declaration of Julie Nichols ("Nichols Decl."), ¶ 1.)  Ms. Williams began

9  working as independent contractor with Flair in May 2014 before becoming an employee of

10  Nichols in October 2016.  (Nichols Decl., ¶¶ 12-13; *see* Williams Depo. at 11:8-12:1.)  During her

11  relationship with Flair and Nichols, Ms. Williams worked as a roadshow representative for a

12  variety of specialty product suppliers.  Prior to each roadshow, Ms. Williams received a package

13  of information from Flair or Nichols that contained information about the time and location of the

14  roadshow, a blank invoice form, and an independent contactor agreement.  (Williams Depo. at

15  13:5-15:18; *see also* Nichols Decl., ¶ 14.)  The independent contractor agreement identified the

16  roadshow's location and provided the name of the client supplier whose products Ms. Williams

17  would be selling.  (Williams Depo. at 32:10-33:19; *id.*, Ex. 100 (Independent Contractor

18  Agreement).)  It also set forth Ms. Williams's scheduled hours for coverage of the display for the

19  duration of the roadshow, which typically lasted multiple days.  (Williams Depo., Ex. 100.)

20          According to Ms. Williams, Costco managers at certain warehouse locations would require

21  her to comply with certain rules and procedures during roadshows.  Costco managers would tell

22  roadshow representatives where to set up, how to greet customers, and what to wear.  (Declaration

23  of Shaun Setareh. ("Setareh Decl."), ¶ 6, Ex. A (Deposition of Sigrid Williams ("Williams

24  Depo.")) at 26:11-15, 83:4-15; Setareh Decl., ¶¶ 8-9, Exs. C-D[1].)  At the end of the roadshow, Ms.

25

26  _____

    [1]      Costco has raised evidentiary objections to exhibits C and D submitted in support of
    Plaintiff's opposition to summary judgment.  However, the Court concludes that Costco's motion

27  for summary judgment should be granted based upon review of all the materials submitted,
    regardless of whether Costco's objects were sustained.  Accordingly, the objections are overruled

28  as moot.

1    Williams would submit her invoices to Flair or Nichols to receive payment for her work.  (Nichols

2    Decl., ¶ 14; Williams Depo. at 33:24-34:1; 38:2-7.)  Costco did not pay Ms. Williams.  (Williams

3    Depo. at 38:2-7.)  On May 2, 2017, Ms. Williams requested that Nichols remove her from its list

4    of roadshow representatives.  (Nichols Decl., ¶ 15, Ex. 4; Williams Depo. at 69:12-22, Ex. 105.)

5         The Court will address additional facts as necessary in its analysis.

6                                           **ANALYSIS**

7    **A.  The Court Grants the Parties' Requests for Judicial Notice.**

8         Costco requests that the Court take judicial notice of the hearing transcript from a

9    summary judgment hearing in a state court proceeding bringing similar allegations against Costco,

10   *Cash et al. v. Smart-Professionals, LLC et. al.*  Plaintiff does not object to this request.

11   Accordingly, the Court GRANTS Costco's request and takes judicial notice of the hearing

12   transcript, but it shall not take judicial notice of any disputed fact therein.  *See Foster Poultry*

13   *Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012) ("Courts

14   routinely take judicial notice of publicly available records, including hearing transcripts, from

15   other court proceedings.").

16        Plaintiff requests that the Court take judicial notice of three complaints filed in state court

17   bringing similar allegations against Costco.  Costco objects to this request as inadmissible

18   character evidence.  The complaints are matters of public record.  Accordingly, the Court

19   GRANTS Plaintiff's request and takes judicial notice of these documents, but it shall not take

20   notice of any disputed facts in the complaints.  *In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d

21   948, 964 (N.D. Cal. 2017).

22   **B.  Legal Standard Applicable to Motion for Summary Judgment.**

23        "A party may move for summary judgment, identifying each claim or defense … on which

24   summary judgment is sought."  Fed. R. Civ. P. 56(a).  A principal purpose of the summary

25   judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v.*

26   *Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment, or partial summary judgment, is

27   proper "if the movant shows that there is no genuine dispute as to any material fact and the movant

28   is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In considering a motion for

United States District Court
Northern District of California

4

1   summary judgment, the court may not weigh the evidence or make credibility determinations and

2   is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v.*

3   *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514

4   F.3d 878, 884-85 (9th Cir. 2008).

5        The party moving for summary judgment bears the initial burden of identifying those

6   portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue

7   of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is

8   "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-

9   moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material"

10  if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its initial

11  burden, the non-moving party must "identify with reasonable particularity the evidence that

12  precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting

13  *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also* Fed. R. Civ. P. 56(c)(3)

14  ("The court need consider only the cited materials, but it may consider other materials in the

15  record."). If the non-moving party fails to point to evidence precluding summary judgment, the

16  moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

17       Costco bears the burden of persuasion on the issue of whether Costco is a joint employer.

18  *See Rios v. Airborne Express, Inc.*, No. C-05-2092 VRW, 2006 WL 2067847, at *2 (N.D. Cal.

19  July 24, 2006). Therefore, in order to prevail on its motion, Costco must establish there are no

20  genuine issues of disputed facts that Costco is a joint employer. *Celotex*, 477 U.S. at 322-23 ("the

21  plain language of Rule 56(c) mandates the entry of summary judgment…against a party who fails

22  to make a showing sufficient to establish the existence of an element essential to that party's case,

23  and on which that party will bear the burden of proof at trial").

24  **C. Costco's Joint Employer Status.**

25       To be liable for labor violations under California law, a defendant must be the plaintiff's

26  employer. *See Martinez v. Combs*, 231 P.3d 259, 267–68 (Cal. 2010). More than one party may

27  act as an employer if a joint employer relationship exists. *Id.* at 268. Costco argues that it is

28  entitled to summary judgment as to all of Plaintiff's claims because it is not a joint employer under

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the framework set out in *Martinez*.  Under *Martinez*, the test for an employer is whether the party:

2    (i) exercises control over an individual's wages, hours, or working conditions; (ii) suffers or

3    permits the individual to work; or (iii) engages an individual and creates a common law

4    employment relationship.  *Martinez v. Combs*, 231 P.3d at 278.

5            **1.      Costco did not exercise "control" over Ms. Williams.**

6            Under *Martinez*'s first prong, an entity employs workers if it "directly or indirectly, or

7    through an agent or any other person employs or exercises control" over their wages, hours, or

8    working conditions.  *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1233 (N.D. Cal. 2015)

9    (quoting IWC Wage Order No. 9-2001 § 2(G)).  "California courts have circumscribed this

10   definition by denying employer liability for entities that may be able to influence the treatment of

11   employees but lack the authority to directly control their wages, hours or conditions."  *Id.*

12           Costco argues that the undisputed evidence shows that it did not exercise control over

13   Plaintiff's wages, hours, or working conditions.  Specifically, Costco adduces evidence that Ms.

14   Williams was hired by Flair and Nichols, not Costco.  Moreover, Ms. Williams testified that her

15   schedule and hours for the roadshows were determined by Flair and Nichols. (Williams Depo. at

16   62:17-22.)  Ms. Williams never applied for employment with Costco, and Costco never hired her.

17   (*Id.* at 100:2-6.)  Costco also submits evidence showing that Flair and Nichols—not Costco—paid

18   Ms. Williams for her work at the roadshows and set her rate of pay.  (Nichols Decl., ¶ 14;

19   Williams Depo., Exs. 113-116.)  Ms. Williams also testified that she did not receive training from

20   Costco.

21           In response, Ms. Williams does not dispute that Costco did not hire her, train her, or pay

22   her.  Instead, she points to other evidence to suggest that Costco did exercise control over her

23   work activities such that it was her joint employer.  For example, at her deposition Ms. Williams

24   testified that Costco required that the roadshow booths be staffed at all times and imposed certain

25   requirements on roadshow representatives when they were on the floor, including prohibiting

26   roadshow representatives from: (1) sitting while manning a booth; (2) keeping purses and

27   backpacks in the work area; (3) eating or drinking in the work area; and (4) using their cell phones

28   for personal use, and she submits guidelines from Costco that set forth these requirements.

United States District Court
Northern District of California

1    However, Ms. Williams never received these guidelines.  (Williams Depo. at 28:16-21.)  She also

2    argues that because Costco had the authority to bar a roadshow representative from its premises, it

3    effectively had the power to terminate a roadshow representative though she does not present

4    evidence that Costco ever barred her from a roadshow.

5          The Court finds that Plaintiff's evidence does not raise a triable issue of fact as to whether

6    Costco exercised the requisite control to qualify as a joint employer under *Martinez.*  The

7    undisputed evidence shows that Nichols and Flair hired and paid Ms. Williams and determined at

8    which roadshows she would work.  At best, Plaintiff's evidence suggests that Costco imposed

9    certain requirements on roadshow representatives while they were on Costco premises in order to

10   maintain a consistent brand standard.  (*See* Setareh Decl., Ex. C (noting that "[t]he emphasis and

11   focus will be that we achieve a standard and expectation that is consistent throughout all Costco

12   Wholesale locations…").)  This type of oversight, however, "does not represent control over

13   wages, hours, or working conditions" of the roadshow representatives where it is undisputed that

14   Costco did not hire or fire the representatives or set their rate of pay.  *Salazar v. McDonald's*

15   *Corp.*, 944 F.3d 1024, 1030 (9th Cir. 2019) (finding McDonald's was not an employer under

16   *Martinez*'s control definition where any control over franchisees' workers was geared toward

17   quality control, not control over the day-to-day aspects of work); *Johnson v. Serenity*

18   *Transportation, Inc.*, 141 F. Supp. 3d 974, 998 (N.D. Cal. 2015) ("mere imposition of

19   requirements or oversight of workers' performance is not enough to make the overseeing entity a

20   joint employer absent hiring and firing power"); *Futrell v. Payday California, Inc.*, 190 Cal. App.

21   4th 1419, 1432 (2010) (concluding that "'control over wages' means that a person or entity has the

22   power or authority to negotiate and set an employee's rate of pay" and noting that the employer "is

23   the party who hires the employees and benefits from the employee's work").  The control Costco

24   may have asserted over roadshow representatives does not "negate or call into question the

25   dispositive fact that the authority to make hiring, firing, wage and staffing decisions" impacting

26   Ms. Williams was in the hands of Nichols and Flair.  *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d

27   1228, 1236 (N.D. Cal. 2015).  The Court concludes that there is no genuine issue of material fact

28   that would permit a jury to find that Costco was Plaintiff's joint employer under *Martinez*'s

control test.

### 2.    Costco did not "suffer or permit" Ms. Williams to work.

The basis for liability under *Martinez*'s suffer-or-permit test is "the defendant's knowledge of and *failure to prevent* the work from occurring." *Martinez*, 231 P.3d at 282 (emphasis in original).  Practically speaking, where a party lacks the power to hire, fire, set wages or hours, or dictate when and where to report to work, the relationship fails the suffer-or-permit test. *See id.* at 282-83.

As discussed in regard to the control test, Costco's evidence shows that Flair and Nichols hired Ms. Williams, set her rate of pay, paid her, and set her schedule for her roadshows.  It is also undisputed that Ms. Williams notified Flair and Nichols, not Costco, when she decided she no longer wished to work as a roadshow representative.  Indeed, she testified that she felt no need to tell Costco.  (Williams Depo. at 71:8-12.)  Plaintiff argues that Costco's ability to ask a roadshow representative to leave its premises was tantamount to firing them.  However, even if a Costco manager had made such a request to Ms. Williams, she does not argue that it would have terminated her employment with Nichols or Flair or that it would have necessarily prevented her from working as a roadshow representative at a different Costco warehouse locations.  *See Martinez*, 231 P.3d at 278 (noting that although the merchants "might as a practical matter have forced [the farmer] to lay off workers or to divert their labor to other projects" that alone "does not transform the purchaser into the employer of the supplier's workforce"); *Futrell*, 190 Cal.App.4th at 1434 (finding no evidence that Payday allowed the plaintiff to suffer work "because there is no evidence showing Payday had the power to either cause him to work or prevent him from working").  Accordingly, the Court concludes that there is no genuine issue of material fact that would permit a jury to find that Costco was Plaintiff's joint employer under *Martinez*'s suffer-or-permit test.

### 3.    Costco did not "engage" Ms. Williams.

Under the *Martinez* framework, "to engage" means to create a common law employment relationship.  *Martinez*, 231 P.3d at 278.  A common law employment relationship exists where a party reserves the general right to control the "manner and means" of performing the work at

1    issue. *S.G. Borello & Sons, Inc. v. Dept' of Indus. Relations*, 48 Cal. 3d 341, 350 (Cal. 1989). In

2    evaluating whether an employer-employee relationship exists at common law, California courts

3    consider several factors, including the right to fire the employee at will, and:

> (a) whether the one performing the services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principle or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principle or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

10   *Id.* at 351.

11         As an initial matter, Plaintiff does not address the "engage" test in her opposition and

12   accordingly, has conceded the argument that Costco is not a joint employer under this theory.

13   *Ardente, Inc. v. Shanley,* No. 07-cv-4479-MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010)

14   (failure to respond to argument is concession "through silence"). In any event, any control Costco

15   had over the manner and means of work performed during roadshows was limited to maintaining

16   consistent brand standards; it was Flair and Nichols, not Costco that "engaged" Ms. Williams.

17   The Court finds that there is no dispute that Costco did not "engage" Ms. Williams under

18   *Martinez.*

19         **4.    *Dynamex* does not apply here.**

20         In *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018), the California

21   Supreme Court adopted an "ABC test" to use when analyzing whether a worker is misclassified as

22   an independent contractor, rather than an employee. 4 Cal. 5th at 916. Under the ABC test, the

23   burden of proof is on the hiring entity to prove "(A) that the worker is free from the control and

24   direction of the hiring entity in connection with the performance of the work; *and* (B) that the

25   worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that

26   the worker is customarily engaged in an independently established trade, occupation, or business

27   of the same nature as the work performed." *Id.* at 957.

28         Costco argues that the ABC test established in *Dynamex* does not apply in the joint

United States District Court
Northern District of California

1    employment context, and even if did, Costco asserts that it would not be considered an employer

2    under the test.  Plaintiff does not respond to Costco's argument regarding *Dynamex*'s applicability,

3    but she nevertheless applies the ABC test to argue that Costco should be considered her employer.

4         The Court finds *Dynamex* is inapplicable.  Here, the core dispute is whether Ms. Williams

5    is an employee of Costco under a joint employment theory; no party argues that Ms. Williams is

6    an independent contractor.  Accordingly, *Dynamex* does not apply.  *Salazar*, 944 F.3d at 1032

7    (finding *Dynamex* had no bearing in joint employment cases where no party argued that the

8    plaintiffs were independent contractors); *Curry v. Equilon Enterprises, LLC*, 23 Cal. App. 5th 289,

9    314 (2018), *as modified on denial of reh'g* (May 18, 2018), *review denied* (July 11, 2018)

10   (concluding that "it does not appear that the Supreme Court intended for the "ABC" test to be

11   applied in joint employment cases" because the test addresses "the issue of whether employees

12   were misclassified as independent contractors").

13        Accordingly, the Court finds there is no genuine dispute as to whether Costco was Ms.

14   Williams's joint employer and GRANTS Costco's motion for summary judgment.  Because only

15   an employer can be liable for labor code violations under California law, Plaintiff's claims for

16   meal breaks, rest breaks, and unpaid time fail.  *Luna v. Universal Studio City Prods. LLLP*, 2013

17   WL 12308198, at *3 (C.D. Cal. Aug. 27, 2013) ("[O]nly an 'employer' is liable for failing to

18   provide an employee with meal or rest periods and failing to furnish accurate, itemized wage

19   statements.... [O]nly an 'employee' may bring actions to recover for unpaid overtime

20   compensation and failure to pay minimum wages").  Because Ms. Williams concedes that her

21   claims under section 203, the FLSA, and the UCL are derivative of the overtime, rest, and meal

22   break claims, Costco is entitled to summary judgment on those claims as well.[2]

23   **D.  Client Employer Liability Under Section 2810.3.**

24        Plaintiff argues Costco is liable for the wage and hour violations alleged in the operative

25   complaint under Labor Code section 2810.3 ("Section 2810.3") regardless of whether Costco is a

26

27   _____

     [2]      Because the Court finds that Costco was not a joint employer, it need not reach Costco's
28   alternative arguments regarding Plaintiff's section 203 waiting time penalty claim and section 226
     wage statement claim.  (*See* Mot. at 23-25.)

United States District Court
Northern District of California

joint employer.  Under Section 2810.3, "a client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for ... the payment of wages."  Cal. Labor Code § 2810.3(b).  A "client employer" is "a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor."  *Id.* § 2810.3(a)(1)(A).  "'Usual course of business' means the regular and customary work of a business, performed within or upon the premises or worksite of the client employer."  *Id.* § 2810.3(a)(6).  A "labor contractor" means an entity that supplies a client employer with workers to perform labor within the client employer's usual course of business.  *Id.* § 2810.3(a)(3); *see Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2017 WL 1365112, at *22 (N.D. Cal. Apr. 14, 2017).

Costco argues that it is not a "client employer" within the meaning of Section 2810.3. Costco submits affidavits from company employees attesting that Costco treats products sold at roadshows differently than its typical "in line" merchandise and that products sold at roadshows are not otherwise offered for sale at Costco.  (Vetter Decl., ¶ 4-5; Carter Decl., ¶¶ 4-6.) Additionally, the Costco employees attest that roadshows account for no more than one-half of one percent of Costco's sales in California.  (Vetter Decl., ¶ 5.)  In response, Plaintiff asserts that Costco's usual course of business is "demonstrating and selling merchandise to Costco customers at Costco stores" but provides not evidence to rebut Costco's showing that roadshows are not integral to its business and are separate from its usual business practice.  Accordingly, the Court finds that Costco cannot be liable as a client employer under Section 2810.3.

**E.  FLSA Claim Under *Bonnette*.**

Costco also argues that it is entitled to summary judgment on Plaintiff's cause of action under the FLSA.  As with California law, to be liable for labor violations under federal law, a defendant must be an employer.  *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).  Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee…"  29 U.S.C. § 203(d).  To determine whether an employer relationship exists, the Ninth Circuit examines the "economic reality" of the relationship, giving particular attention to the so-called *Bonnette* factors: whether

United States District Court
Northern District of California

the alleged employer (i) had the power to hire and fire employees; (ii) supervised and controlled employee work schedules or conditions of employment; (iii) determined the rate and method of payment; and (iv) maintained employment records.  *Bonnette*, 704 F.2d at 1470 (joint employment successfully shown where defendants paid workers, maintained employment records, determined worker task and schedule, controlled rate and method of payment, and had "periodic and significant" involvement in supervising job performance).  Ms. Williams does not address the *Bonnette* factors in her opposition.  Her sole defense of her FLSA claim is that it must proceed as it is derivative of her claims for meal and rest breaks.  However, because the Court finds that Costco is entitled to summary judgment on those claims, Plaintiff's FLSA claim fails too.  Regardless, the *Bonnette* factors weigh against a finding of joint employment here.  As discussed above, the record shows that Nichols and Flair, not Costco, retained the authority to hire and fire Ms. Williams, supervised the scheduling of her roadshow engagements, set her rate of pay, and kept records regarding her work as a roadshow representative.  Accordingly, the evidence does not support a finding of a joint employment relationship between Costco and Ms. Williams under federal law.[3]

## CONCLUSION

For the reasons explained above, the Court HEREBY GRANTS Costco's motion for summary judgment.  A separate judgment shall issue, and the clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: July 10, 2020

_____

JEFFREY S. WHITE
United States District Judge

---

[3]      Because the Court has determined that Costco was not a joint employer, it need not address the question of whether Ms. Williams would qualify as an exempt outside salesperson under *Moore*.

United States District Court
Northern District of California